IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MALRIK C. BOOSE,
        Petitioner,

v.                                              Case No.  3:08cv456/MCR/CJK

KENNETH S. TUCKER,[1]
        Respondent.
_____

ORDER and
REPORT AND RECOMMENDATION

        Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C.
§ 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the
state court record.  (Doc. 38).  Petitioner has replied.  (Doc. 42).  The matter is
referred to the undersigned magistrate judge for report and recommendation pursuant
to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all
issues raised by petitioner, the undersigned concludes that no evidentiary hearing is
required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section
2254 Cases in the United States District Courts.  The undersigned further concludes
that the pleadings and attachments before the Court show that petitioner is not
entitled to relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

        On August 18, 2005, petitioner was charged in Okaloosa County Circuit Court
Case No. 05-CF-1923, with Possession of a Firearm by a Convicted Felon.  (Doc. 38,

_____

        [1]Kenneth S. Tucker succeeded Walter A. McNeil as Secretary of the Florida Department of
Corrections, and is automatically substituted as the respondent.  Fed.R.Civ.P. 25(d).

Ex. A, p. 5).[2]  Petitioner was alleged to be a "convicted felon" by virtue of his conviction of selling, manufacturing or delivering a controlled substance in Okaloosa County Circuit Court Case Number 99-CF-121.  (*Id*.).   On January 12, 2006, petitioner entered a counseled no contest plea to the firearm possession charge, pursuant to a negotiated plea agreement.  (*Id*., pp. 20-26, 64-69).   Petitioner's sentencing was scheduled for February 14, 2006; however, petitioner failed to appear for sentencing.  On June 7, 2007, petitioner was charged in Okaloosa County Circuit Court Case No. 07-CF-1393, with felony Failure to Appear. (*Id*., p. 35).  On June 27, 2007, petitioner entered a counseled no contest plea to the failure to appear charge, pursuant to a negotiated plea agreement.  (*Id.*, pp. 41-44, 70-84).  Petitioner was sentenced, consistent with the two plea agreements, to a 3-year term of imprisonment with a 3-year mandatory minimum on the firearm possession offense, and a consecutive 2-year term of imprisonment on the failure to appear.  (*Id*., p. 81). Judgment was rendered July 13, 2007.  (*Id*., pp. 51-57).  The judgment was amended on September 18, 2007, to correct petitioner's jail credit.  (*Id*., p. 55 and pp. 95-116).

On July 16, 2007, petitioner filed a *pro se* motion to withdraw plea, arguing that his no contest pleas were involuntary, because he did not understand the consequences of his pleas, did not have adequate time to discuss any possible defenses or trial strategies with his attorney, and "felt pressured to take the plea" by counsel's lack of "approp[r]iate" representation.  (Ex. F, pp. 1-4).

On July 17, 2007, petitioner filed a notice of appeal of his judgment and sentence (styled "Amended Notice of Appeal").  (Ex. A, p. 62).  The Florida First

---

[2]Hereafter, all references to exhibits will be to those provided at Doc. 38, unless otherwise noted.

District Court of Appeal ("First DCA") assigned Case No. 1D07-3953.  On July 30, 2007, the First DCA issued two orders.  The first order required petitioner to file an amended notice of appeal containing a proper certificate of service showing service upon the attorney general.  The second order required petitioner to pay the filing fee or submit a lower tribunal order of insolvency.  (*See* Ex. B).

On August 1, 2007, the trial court denied petitioner's motion to withdraw plea. (Ex. F, pp. 9-10).  Petitioner filed a notice of appeal on August 20, 2007 (*id*., p. 53), which was amended on August 28, 2007 (*id*. p. 56).[3]  The First DCA assigned Case No. 1D07-4425.  On August 28, 2007, the First DCA issued an order requiring petitioner to pay the appellate filing fee or submit a lower tribunal order of insolvency.  (*See* Ex. G).

On October 4, 2007, petitioner filed with the clerk of the circuit court an application for criminal indigent status. (Ex. A, pp. 121-22).  The application did not have an appellate case number on it; rather, petitioner identified the case number as "Appeals Court."  (*Id*., p. 121).  The clerk of the circuit court determined that petitioner was indigent (*id*., p. 121), and on November 26, 2007, transmitted a certified copy of the record on petitioner's direct appeal to the First DCA.  (*Id*., p. 125).  Petitioner's application for criminal indigent status and the clerk's determination of indigency was transmitted as part of the direct appeal record.  (*Id*., p. 121).[4]  Also on November 26, 2007, the clerk of the circuit court transmitted,

---

[3]Petitioner's amended notice of appeal incorrectly identified the appellate case number as 1D07-4384, instead of 1D07-4425.  (Ex. F, p. 56).

[4]The direct appeal record transmitted by the circuit court also contained an "Amended Notice of Appeal" signed by petitioner on October 6, 2007.  (Ex. A, p. 124).  This "Amended Notice of Appeal" identified the appellate case number as 1D07-4384.  Petitioner stated he was appealing a

separately, a certified copy of the record on appeal of the order denying petitioner's motion to withdraw plea. (Ex. F, p. 57). Petitioner's application for criminal indigent status and the clerk's determination of indigency was not transmitted as part of that record.

On December 11, 2007, the First DCA dismissed Case No. 1D07-4425 (petitioner's appeal of the order denying motion to withdraw plea), for petitioner's failure to respond to the August 28, 2007 order requiring petitioner to pay the filing fee or submit a lower tribunal order of insolvency. (Ex. G). On December 31, 2007, the First DCA dismissed Case No. 1D07-3953 (petitioner's direct appeal) for petitioner's failure to properly respond to the July 30, 2007 orders requiring petitioner to file an amended notice of appeal with proper certificate of service and a lower tribunal order of insolvency. (Ex. B; *see also* Doc. 1, p. 2).

Amid all of the foregoing, petitioner filed a *pro se* motion for postconviction relief on August 19, 2007, requesting that his sentences be run concurrently. (Ex. C, pp. 1-3). In support, petitioner alleged that the court exceeded the sentencing guidelines; that at the time of petitioner's sentencing petitioner's trial counsel labored under a conflict of interest because counsel's law firm employed the attorney who prosecuted petitioner in the firearm possession case; and that the trial court should have offered petitioner probation instead of jail time. (*Id*.). On September 14, 2007, the trial court dismissed the motion without prejudice for lack of jurisdiction due to the pendency of petitioner's direct appeal. (*Id*., pp. 6-7). Petitioner filed a notice of appeal on August 19, 2007, indicating that he was appealing a final order issued June

circuit court order rendered July 30, 2007, and that the nature of the order was "a final order Denial of Withdrawal of Plea." (*Id.*).

27, 2007.  (*Id.*, pp. 8, 10).   The First DCA assigned Case No. 1D07-4384.   On February 12, 2008, the First DCA issued the following order:

> On August 19, 2007, the appellant filed an "Amended Notice of Appeal" purporting to appeal a final order rendered June 27, 2007.  This order does not exist.  The appellant is therefore ordered to show cause within 20 days of the date of this order why this appeal should not be dismissed for lack of jurisdiction.  The failure of appellant to timely comply with this order could result in the imposition of sanctions, including dismissal of the proceedings without further opportunity to be heard.  Florida Rule of Appellate Procedure 9.410.

(Ex. D).  On April 8, 2008, the First DCA dismissed petitioner's appeal, stating: "Not having received a response to this Court's order of February 12, 2008, requiring appellant to show cause why this appeal should not be dismissed for lack of jurisdiction, the above-styled cause is hereby dismissed."  (Ex. E).

On August 27, 2007, petitioner filed a petition for writ of habeas corpus in this Court.  *Boose v. McNeil*, 3:07cv366/RV/MD.  (Case No. 3:07cv366, Doc. 1).  The petition was dismissed without prejudice on April 23, 2008, as a "mixed petition."  (*Id.*, Docs. 35-37).

On March 26, 2008, petitioner filed a motion for postconviction relief in the trial court requesting that the mandatory minimum sentence be removed and that his sentences be run concurrently.  (Ex. H, p. 1).  In support, petitioner alleged that the charges stemmed from a case in which he was found not guilty, that he was not a habitual offender, and that he should receive a downward departure.  (*Id.*).  On April 10, 2008, the trial court denied petitioner's motion to the extent petitioner sought a reduction of sentence.  (Ex. I).  The court ruled that to the extent petitioner sought postconviction relief under Fla. R. Crim. P. 3.850, the motion was facially insufficient and was denied without prejudice to petitioner's timely filing a proper motion.  (*Id.*).

Petitioner did not appeal the order.

On April 2, 2008, petitioner filed another motion to vacate sentence.  (Ex. J).

Petitioner alleged that trial counsel was ineffective for failing to move to dismiss the

charges on double jeopardy grounds under Florida Rule of Criminal Procedure

3.190(c)(2), and that trial counsel labored under a conflict of interest because he

concealed from petitioner that the state attorney who prosecuted petitioner's firearm

possession case now worked for defense counsel.  (*Id*., pp. 1-2).  On April 8, 2008,

the trial court denied the motion without prejudice as facially insufficient under Fla.

R. Crim. P. 3.850(c) because, among other deficiencies, the motion lacked a proper

oath.  (Ex. K).  Petitioner did not appeal the order.

On May 4, 2008, petitioner filed another motion to vacate sentence.  (Ex. L).

Petitioner alleged that his conviction of possession of a firearm by a convicted felon

violated double jeopardy and "collateral stoppage" principles, because the charge

stemmed from a previous charge of aggravated battery for which petitioner was tried

and found not guilty.  Petitioner further claimed that trial counsel was ineffective

because counsel failed to move to dismiss the charge and because counsel labored

under a conflict of interest arising from his employing the state attorney who

prosecuted petitioner in the firearm possession case.  (*Id*., pp 1-3).  On August, 19,

2008, the trial court denied the motion.  (Ex. M).  Petitioner did not appeal the order.

Petitioner filed the instant *pro se* § 2254 petition in this Court on October 5,

2008.  (Doc. 1).  The petition raises four grounds for relief:  (1) petitioner's pleas are

involuntary because trial counsel labored under a conflict of interest and because

petitioner had two cases where he was charged under the same statute number; (2)

petitioner's conviction for possession of a firearm violates double jeopardy

principles; (3) the State used biased and contaminated evidence from petitioner's "first case" in petitioner's "second case" because the State listed witnesses from the first case on its discovery disclosure in the second case; and (4) petitioner's pleas are involuntary because trial counsel concealed a conflict and failed to advise the court that petitioner entered his pleas under duress. (Doc. 1, pp. 4-5). Respondent asserts that all of petitioner's claims are procedurally defaulted. (Doc. 38).

## EXHAUSTION AND PROCEDURAL DEFAULT

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[5] thereby giving the state the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner "must give the state courts one full

---

[5]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

          (A)  the applicant has exhausted the remedies available in the courts of the State; or

          (B) (i)  there is an absence of available State corrective process; or

               (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.

A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S.Ct. at 1734; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11ᵗʰ Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11ᵗʰ Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 734-35 and n. 1, 111 S.Ct. 2546, 2555, 115 L.Ed.2d 640 (1991); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11ᵗʰ Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303. In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of federal law. *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).

To overcome a procedural default, the petitioner must show cause and prejudice, or a fundamental miscarriage of justice. *Tower v. Phillips*, 7 F.3d 206, 210 (11ᵗʰ Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11ᵗʰ Cir. 1990), *rev'd on other*

*grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L.Ed.2d 397 (1986)).  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Ground 1     "Conflict of Interest."  (Doc. 1, p. 4).

Petitioner alleges:  "The prosecutor who prosecuted the case which this case stems from started working for my attorney.  This violated lawyer-client privilage [sic].  This also violated my constitutional right to have a fair and impartial trial and represation [sic]."  (Doc. 1, p. 4).  Petitioner asserts he presented this claim to the state courts when he "raised this as a violation of his 5th Amendment right saying the attorney knowingly and willingly concealed a conflict."  (*Id*.).  Respondent asserts a procedural default defense, arguing that although petitioner raised this claim in his

May 4, 2008 motion to vacate, petitioner failed to appeal the trial court's denial order and is now procedurally barred from doing so.  (Doc. 38, pp. 11-12).  Petitioner disagrees, arguing that he exhausted this claim by raising it in his July 16, 2007 motion to withdraw plea, and by appealing the denial order to the First DCA.  (Doc. 42, p. 2).  Petitioner acknowledges that his appeal was dismissed, but argues that the trial court was the cause of his procedural default, because the trial court failed to notify petitioner of its October 17, 2007 determination of indigency, thereby preventing petitioner from complying with the appellate court's show cause order.

The record demonstrates that petitioner did not raise his "conflict of interest" claim in his July 16, 2007 motion to withdraw plea.  (Ex. F, pp. 1-4).  Petitioner raised the claim in his motion for postconviction relief filed on August 19, 2007,  (Ex. C, pp. 1-3), and later reasserted the claim in his motions to vacate filed April 2, 2008 and May 4, 2008.  (Exs. J, L).  Petitioner's appeal of the order denying postconviction relief was dismissed, but not because of petitioner's failure to file an order of insolvency.  The appeal was dismissed on an entirely unrelated basis – petitioner's failure to show cause why his appeal should not be dismissed for lack of jurisdiction (based on the non-existence of the order identified in petitioner's notice of appeal). (Exs. D, E).  The First DCA's dismissal of petitioner's appeal rested on state procedural grounds that were independent of a federal question.  *See* Fla. R. App. P. 9.410 (providing that after 10 days' notice, on its own motion, the court may impose sanctions for any violation of the Florida Rules of Appellate Procedure, and that such sanctions may include dismissal of proceedings); Fla. R. App. P. 9.030(b)(1)(A) (setting forth the appeal jurisdiction of the district courts of appeal).  The state procedural bar was adequate to support the First DCA's decision.

Although petitioner reasserted his "conflict of interest" claim in his April 2, 2008 and May 4, 2008 motions to vacate, petitioner did not appeal from the trial court orders denying relief.  Because the 30-day deadline for appealing the orders has passed, Fla. R. App. P. 9.140(b)(3), petitioner is barred by state procedural rules from attempting to exhaust his claim.  *See, e.g., Knause v. State*, 994 So.2d 1169 (Fla. 1st DCA 2008) (dismissing appeal for appellant's failure to timely invoke the court's appellate jurisdiction).  Petitioner is also time-barred from attempting to present the "conflict of interest" issue in a Rule 3.850 postconviction motion.  *See* Fla. R. Crim. P. 3.850(b).

Petitioner makes none of the requisite showings to excuse his default. Petitioner fails to establish cause and prejudice, and he has not presented new reliable evidence of his actual innocence.  Accordingly, the Court will deny habeas relief as to Ground 1, as procedurally defaulted.

Ground 2      "Double Jeopardy."  (Doc. 1, p. 4)

Petitioner claims:  "The case which this case stems carried Possession of a Firearm and the State used the same statue [sic] numbers in both cases."  (Doc. 1, p. 4).   Petitioner asserts he exhausted this claim by raising a claim of "collateral stoppage" in the state court, as well as an ineffective assistance claim based on counsel's failure to move to dismiss the charges on double jeopardy grounds.  (*Id*.). Respondent contends petitioner's double jeopardy claim is procedurally defaulted, because although petitioner presented this claim in his motion to vacate filed on May 4, 2008, petitioner failed to  appeal the trial court's denial of the motion.  (Doc. 38, pp. 14-15).  Petitioner responds that he raised the claim in a motion to vacate, and that the state appellate court "barred Petitioner's cause over the indigent form." (Doc. 42,

p. 3).  Petitioner's asserts that "[t]he lower court greatly prejudiced Petitioner by not informing Petitioner of his indigent status."  (*Id.*).

Petitioner raised Ground 2, or variations thereof, in his state postconviction motions filed in March, April and May of 2008.  The trial court denied all three motions.  The record demonstrates that petitioner did not appeal any of the three denial orders.  Petitioner is now barred by state procedural rules from attempting to appeal the orders, and from raising the issue in a Rule 3.850 motion.  *See* Fla. R. App. P. 9.140(b)(3); Fla. R. Crim. P. 3.850(b).  Petitioner has not established cause for his failure to appeal, nor has he presented new reliable evidence of his actual innocence. Petitioner's procedural default of Ground 2 bars federal habeas review.

<u>Ground 3</u>      "Using Biased Are [sic] Contaminated Evidence From the First trial to the Second."  (Doc. 1, p. 5).

Petitioner alleges:  "Petitioner asked for motion of discovery, the State had witnesses from a trial the petitioner was found not guilty on."  (*Id.*).  Petitioner asserts he exhausted this claim in a motion to vacate where he "advised State of Florida Rules of Court violation and grounds for insuffient [sic] counsel."  (*Id.*).  Respondent asserts that petitioner never presented his contaminated evidence issue to the state courts, and the claim is now procedurally defaulted.  (Doc. 38, pp. 20-21).  Petitioner responds that he attempted to exhaust this claim in the same manner he attempted to exhaust Grounds 1 and 2 above.  (Doc. 42, p. 3).

Petitioner's "contaminated evidence" claim was not raised in any of petitioner's postconviction motions.  Even assuming, without deciding, that petitioner attempted to exhaust the claim by raising it in his motion for postconviction relief filed on August 19, 2007, (Ex. C, pp. 1-3), in his postconviction motion filed on March 26, 2008, (Ex. H), or in one of his motions to vacate filed on April 2, 2008 and May 4,

2008 (Exs. H, J, L), the claim is procedurally defaulted for the reasons discussed above.  *See* discussions *supra* Grounds 1 and 2.  Petitioner makes none of the requisite showings to excuse his default.  Petitioner's procedural default of Ground 3 bars federal habeas review.

<u>Ground 4</u>     "Involuntary Plea."  (Doc. 1, p. 5).

Petitioner alleges that his plea is involuntary "[b]y the petitioner's attorney concealing a conflict and not advising the court the petitioner's plea was under duress."  (*Id*.).  Petitioner asserts he exhausted this claim, because he "advised State of Rules of Court violation."  (*Id*.).  Respondent asserts a procedural default defense, arguing that although petitioner raised this claim in his postconviction motions, petitioner failed to appeal the orders denying postconviction relief.  (Doc. 38, pp. 22-23).  Petitioner responds in his reply:

> The conflict in ground four is expressed in ground one.  The duress in this ground came when Petitioner advised the judge in open court that he was not satisfied with his attorney.  The judge then threatened Petitioner with more time, to with [sic]: 15 years if he did not accept the State's plea for 5 years.  The lawful thing to have done was called a recess and investigate to see if Petitioner in fact did have ample representation.  This also should have been the time for the attorney to advise the court of the former prosecutor who compiled the evidence and discussed the plea with Petitioner and his attorney.
>
> Petitioner did address this in his motion to withdraw plea.  Petitioner was denied relief as in the above grounds.

(Doc. 42, p. 4).

This Court previously concluded that petitioner did not present the "conflict of interest" issue in his motion to withdraw plea, and that although petitioner raised the issue in subsequent motions, he procedurally defaulted the claim by failing to

"invok[e] one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845, 119 S. Ct. at 1732.  *See* discussion *supra* Ground 1. Accordingly, the Court will not consider the merits of petitioner's "conflict of interest" argument.

Petitioner asserts that he exhausted the "duress" aspect of his claim by addressing it in his motion to withdraw plea and appealing the denial of relief. Petitioner acknowledges that his appeal was dismissed for failure to comply with the First DCA's order requiring him to pay the filing fee or submit a lower tribunal order of insolvency, but argues that this Court should consider his claim despite the dismissal, because the trial court impeded him from complying with the order by failing to notify him of its determination of indigency.  Petitioner's argument could be liberally construed as asserting either that the First DCA's dismissal did not rest on adequate state grounds (i.e., that the appellate court unfairly applied the state procedural bar), or that the trial court's failure to notify petitioner of its determination of indigency constitutes "cause" for petitioner's procedural default.  This Court need not decide the procedural default issue, because even giving petitioner the benefit of all doubt and reviewing his "duress" claim on the merits, the record establishes that petitioner's claim is without merit.

Petitioner signed a written Plea and Sentencing Agreement concerning the firearm possession charge.  (Ex. A, pp. 20-23).  The Agreement contains petitioner's acknowledgments that:   (1) petitioner discussed with his attorney all of the ramifications and consequences of entering a plea, (2) petitioner's attorney did not compel or induce petitioner to enter into the plea agreement by any force, duress, threats or pressure; and (3) petitioner was satisfied with his attorney's advice and

services.  (*Id.*).  At the plea hearing on the firearm possession charge, petitioner acknowledged in open court that it was his desire that the court accept his plea of no contest; that petitioner read, signed and understood the written Plea and Sentencing Agreement; that petitioner discussed the Agreement fully with his attorney before he signed it; that petitioner had no questions about the agreement; and that petitioner was satisfied with his attorney.  (*Id.*, pp. 64-69).  After petitioner failed to appear for sentencing and was charged with felony failure to appear, petitioner signed a written Plea and Sentencing Agreement concerning that charge.  (*Id.*, pp. 41-44).  The Agreement on the failure to appear charge contained the same acknowledgments as the agreement on the firearm possession charge, as set forth above.  At the June 27, 2007 plea hearing, the following exchange occurred:

> THE COURT:  All right.  Are you Malrick Boose?
>
> MR. BOOSE:  Yes, sir.
>
> THE COURT:  You previously entered a plea to this court to possession of a weapon by a convicted felon.  The case was set for sentencing and you're now before the court once again not only for sentencing on that offense but also for the purpose of entering a plea on the new charge, the failure to appear charge, and your attorney has announced that you wish to plea nolo contendere to that charge.  Is that your desire?
>
> MR. BOOSE:  Yes, sir.
>
> THE COURT:  Your attorney has filed with the court a plea and sentencing agreement on that new charge.  Did you sign that agreement?
>
> MR. BOOSE:  Yes, sir.
>
> THE COURT:  Did you read it fully before you signed it?

MR. BOOSE:  Yes, sir.

THE COURT:  And did you discuss it in detail with your attorney?

MR. BOOSE:  Yes, sir.

THE COURT:  Do you have any questions about it?

MR BOOSE:  No, sir.

THE COURT:  Are you satisfied with your attorney?

MR. BOOSE:  No, sir.

THE COURT:  What is it that you're  not satisfied about?

MR. BOOSE:  Lack of contact, you know, just not satisfied.

THE COURT:  Lack of contact?

MR BOOSE:  Yes, sir.  I haven't seen him since I've been incarcerated.

THE COURT;  I see.  So do you want me to reject your plea?

MR. BOOSE:  I would – yes, your Honor, I would.

THE COURT:  Okay.

MR. BOOSE:  but I would still like to –

THE COURT:  I'll reject the plea.  We're going to set your failure to appear case for trial next docket day.  Be ready, State?

MS. MASON [Prosecutor]:  Yes, sir.

MR. BOOSE:  Can I have another attorney?  Can I have another

attorney appointed?

THE COURT:  You'll need to file a motion for substitution of counsel. I'll need to look and see whether or not you're entitled to appointment of another attorney.

MR. BOOSE:  Thank you, Judge Barron.  Have a nice day.

MR. FLOWERS [Defense Counsel]:  Thank you, judge.

MS. MASON:   Judge, at this time any state offer on either case is expired and –

THE COURT:  I understand.  Oh, Mr. Boose, the state's – since you didn't appear for sentencing on that first case the state's withdrawn their offer in that case so you're going to be going to trial on both cases.

MS. MASON:  Judge, I'd like to try the failure to appear first.

THE COURT:  Failure to appear will be charged first because we can't – since we can't charge them together so what the state's announced is that you'll – next trial date you'll need to be ready for a failure to appear charge.  Once we try that then that other case will be set for trial because the state's withdrawn their offer since you didn't appear for your sentencing date.

MS. MASON:  Judge, if I could – I think he needs to be arraigned on the failure to appea[r].  I don't think that's happened.

THE COURT:  Yeah, we do need to.  Let's bring him back out.

MS. MASON:  And also, Judge, on the original charge instead of a trial I believe that because he absconded and failed to appear for sentencing the plea should stand and that it should, in fact, just be a sentencing hearing because he did enter a plea expressing satisfaction with his attorney and all the other things on that case.

MR. BOOSE:  Your Honor – Judge, I'm not understanding nothing she's saying right now.  Yeah, I signed a plea already for the possession charge.

MR. FLOWERS:  You Honor –

MS. MASON:  If he's entered that plea, Judge –

THE COURT:  Correct, but I need to know – I'd have to look back at the record to see what was discussed on the record.  If that plea was entered as an agreement – as an agreed plea –

MS. MASON:  Yes, sir.

THE COURT:  – and now the state's going to withdraw your agreement. You have the right to do that since he didn't show up for sentencing but it would – it would terminate – as far as I'm concerned at this point it would terminate the entire plea and we start back where we were –

MS. MASON:  Yes, sir.

THE COURT:  – and he'd be facing two – well, he'd be facing a sentence of 15 years of possession of convicted firearm [sic] but you'd also be entitled to a trial on that and you'd be facing five years on a failure to appear which would be a total of 20 years that you're going to be looking at.  That – and the state has elected –

MR. BOOSE:  Well, I just take the five, your Honor.  I just take the five. I just felt like I was – I was –

THE COURT:  Mr. Boose, I'm not trying to force you into anything.

MR. BOOSE:  I understand, I understand, Jud[g]e.  I take a –

THE COURT:  You already entered a plea for a three year minium mandatory sentence.

MR. BOOSE:  Yes, sir, yes.

THE COURT:  – back over a year ago and you didn't show up for your sentencing date.

MR. BOOSE:  Yes, sir, I understand that.  I understand that completely.

THE COURT:  So you're charged with failure to appear.

MR. BOOSE:  I understand that completely, your Honor.

THE COURT:  I don't know really what all you want to talk to your lawyer about.  If you have a defense to the failure to appear charge, you need to tell him.

MR. BOOSE:  You know what I'm saying, we haven't –

THE COURT:  No, don't tell me.  You need to tell your attorney if you haven't done that.

MR. BOOSE:  Judge, I just get sentence on my charges, your Honor.

THE COURT:  Let's back up.  Are you telling me you want to go ahead and enter the plea that was announced –

MR. BOOSE:  Yes, sir.

THE COURT:  – by Mr. Flowers?

MR. BOOSE:  Yes, sir, your Honor, yes, sir.

THE COURT:  Now, you understand we've had [a]n entire discussion on the record here and you have every right to withdraw that plea, the previous plea.  You have every right at this point and the court's already indicated that to proceed to trial on all these charges.  You understand that?

MR. BOOSE:  I understand, sir.

THE COURT:  You understand that?

MR. BOOSE:  I understand.

THE COURT:  So it's your desire to go ahead and proceed to sentencing then I'm assuming –

MR. BOOSE:  Yes, sir, yes, sir.

THE COURT:  – on the case which you failed to appear on previously?

MR. BOOSE:  Yes. sir.

THE COURT:  And also to go ahead and proceed now with the entry of the plea on the new failure to appear charge –

MR. BOOSE:  Yes, sir.

THE COURT:  – is that correct?

MR. BOOSE:  Yes, sir, yes, sir, yes, sir.

THE COURT:  Well, with that understanding now, once again on the record, Mr. Flowers, would you announce the terms of the plea in the failure to appear charge?

MR. FLOWERS:  In the failure to appear charge, your Honor, 07 CF 1393 the state is recommending and the plea agreement reflects that Mr. Boose would be adjudicated, sentenced to 24 months Department of Corrections, that sentence to be served consecutive to the sentence imposed in 05 CF 1923 which is the case on which Mr. Boose has already entered a plea and has anticipated a three year minimum mandatory prison sentence in that case, $390 in fines and costs.

THE COURT:  Okay.  Once again, Mr. Boose, you are Malrick Boose?

MR. BOOSE:  Yes, sir, I am.

THE COURT:  Your attorney – you're here today for sentencing on the case which was set for sentencing –

MR. BOOSE:  Yes, sir.

THE COURT:  – on February 14th, '06?

MR. BOOSE:  Yes, sir.

THE COURT:  Correct?  In addition, your attorney has now announced you wish to enter a plea on this new charge, the failure to appear charge –

MR. BOOSE:  Yes, sir.

THE COURT:  – and that's your decision freely and voluntarily, correct?

MR BOOSE:  Yes, sir, yes, sir.

THE COURT:  And your attorney's filed a plea and sentencing agreement.  Did you sign that agreement?

MR. BOOSE:  Yes, sir.

THE COURT:  And you read it fully?

MR. BOOSE:  Yes, sir.

THE COURT:  Do you understand it fully?

MR. BOOSE:  Yes, sir.

THE COURT:  Did you discuss it in detail with your attorney?

MR. BOOSE:  Yes, sir.

THE COURT:  Do you understand it?

MR. BOOSE:  Yes, sir.

THE COURT:  Do y[o]u have any questions about it?

MR. BOOSE:  No, sir.

THE COURT:  Are you satisfied with the advice of your attorney?

MR. BOOSE:  Yes, sir.

(Ex. A, pp. 72-81).  The trial court accepted petitioner's plea and sentenced petitioner on both cases, consistent with the plea agreements.  (*Id*., pp. 81-83).

The standard for determining the validity of a guilty or no contest plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant."  *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 1712, 23 L. Ed. 2d 274 (1969).  "Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial[,]" including the defendant's privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers.  *Boykin*, 395 U.S. at 243, 89 S. Ct. 1709.  "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."  *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970).  The voluntariness of a plea "can be determined only

by considering all of the relevant circumstances surrounding it." *Id.*, 397 U.S. at 749, 90 S. Ct. at 1469. Relevant circumstances include the petitioner's statements during the plea colloquy:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977).

Petitioner's allegation that he entered his pleas under duress and that the trial judge threatened him with 15 years if he did not accept the State's plea offer, is conclusively rebutted by the written plea agreements and the plea hearing transcripts. The trial judge did not threaten petitioner – he merely advised petitioner of the maximum possible penalty petitioner faced if he withdrew his plea to the firearm possession charge, proceeded to trial on each charge, and was found guilty. *See* Fla. Stat. §§ 790.23, 775.087(2) and 843.15(1a). Petitioner acknowledged to the judge that he did not construe the judge's statement as coercive. (Ex. A, p. 77). Because the record conclusively establishes that petitioner's pleas were knowing, intelligent and voluntary, and were not entered under duress by threat from the trial judge, petitioner is not entitled to federal habeas relief.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of

appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Therefore, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

The clerk shall change the docket to reflect that Kenneth S. Tucker has been substituted as respondent in this cause.

And it is respectfully RECOMMENDED:

1. That the petition for writ of habeas corpus (doc. 1), challenging the convictions and sentences in *State of Florida v. Malrik Cordale Boose* in the Circuit Court for Okaloosa County, Florida, Case Nos. 05-CF-1923 and 07-CF-1391 be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 8th day of December, 2011.

/s/ *Charles J. Kahn, Jr.*
CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).